# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIVE FACE ON WEB, LLC,<br>a Pennsylvania limited liability company,<br><br>                    Plaintiff,<br><br>          vs.<br><br>BROKERSBULLPEN, LLC,<br>a New Jersey corporation, and EVAN<br>SADOWSKI,<br><br>                    Defendants. | Civil Action<br><br><br><br>No.: 1:15-cv-06838-JHR-AMD |

## <u>ORDER</u>

AND NOW, this ____ day of _____, 2016, upon consideration of Plaintiff, Live Face On Web, LLC's ("Plaintiff"), Motion to Compel Discovery Responses (this "Motion"), and any responses thereto, it is ORDERED and DECREED that the Motion is GRANTED and:

1.      Within five (5) days of this Order, the Defendants shall provide full and complete Answers to Interrogatories, without objection, in complete conformity with the Federal Rules of Civil Procedure;

2.      Within five (5) days of this Order, the Defendants shall produce all documents requested by Plaintiff's Request for Production of Documents, without objection, in complete conformity with the Federal Rules of Civil Procedure;

3.      Within five (5) days of this Order, the Defendants shall provide responses to Plaintiff's Requests for Admissions, without objection,  in complete conformity with the Federal Rules of Civil Procedure; and

4.      Defendants' failure to timely comply with any term of this Order shall result in further sanctions upon application to the Court.

BY THE COURT:

_____
The Honorable Ann Marie Donio
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIVE FACE ON WEB, LLC,<br>a Pennsylvania limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BROKERSBULLPEN, LLC,<br>a New Jersey corporation, and EVAN<br>SADOWSKI,<br><br>Defendants. | Civil Action<br><br><br><br>No.: 1:15-cv-06838-JHR-AMD |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that plaintiff Live Face On Web, LLC, by and through its attorney Vladislav Tinovsky, Esquire, upon a memorandum of law, shall move before the Honorable Ann Marie Donio, U.S.M.J., at the United States District Court for the District of New Jersey, 4th & Cooper Streets, Camden, NJ, Courtroom 3B, on April 18, 2016, pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1, for an Order compelling Defendants to produce discovery responses to Plaintiff's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission.

Respectfully submitted,

TINOVSKY LAW FIRM

Dated: March 24, 2016      By:/s/ Vladislav Tinovsky_____
         Vladislav Tinovsky, Esquire
         Attorney ID 031122000
         5 Neshaminy Interplex
         Suite 205
         Trevose, PA 19053
         215-568-6860
         *Counsel for Plaintiff Live Face On Web, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIVE FACE ON WEB, LLC, <br> a Pennsylvania limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> BROKERSBULLPEN, LLC, <br> a New Jersey corporation, and EVAN <br> SADOWSKI <br><br> Defendants. | Civil Action <br><br><br><br> No.: 1:15-cv-06838-JHR-AMD |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION TO COMPEL DISCOVERY RESPONSES

Respectfully Submitted,

By: Vladislav Tinovsky, Esquire
TINOVSKY LAW FIRM
Attorney ID 031122000
5 Neshaminy Interplex
Suite 205
Trevose, PA 19053
215-568-6860
*Counsel for Plaintiff Live Face On Web, LLC*

1

## TABLE OF CONTENTS

I.    BACKGROUND……………………………………………………………3
II.   DISCOVERY DISPUTE……………………………………………………3
III.  LEGAL ARGUMENT…………………………………………………….....4

## TABLE OF AUTHORITIES

**CASES**

*Pacitti, et al. v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)…………………………………....4
*In re Madden*, 151 F.3d 125, 128 (3d Cir. 1998)……………………………………...........5

**STATUTES**

Federal Rule of Civil Procedure 26……………………………………………………4,5
Federal Rule of Civil Procedure 37……………………………………………………3
Local Rule 37.1……………………………………………………………………...3
Federal Rule of Evidence 401………………………………………………………5

Plaintiff, Live Face On Web, LLC ("Plaintiff" or "LFOW"), pursuant to Federal Rule of Civil Procedure 37 and Local Rule of Civil Procedure 37.1, respectfully requests the Court to compel Defendants to respond to Plaintiff's First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions directed to Defendants Brokersbullpen, LLC and Evan Sadowski, and in support thereof, avers as follows.

## I.   BACKGROUND

1.      Plaintiff is a developer and owners of "live person" software, which is an original work of authorship independently created by LFOW ("LFOW Software").

2.      The LFOW Software packages contain copyrighted source code, the infringement of which is at issue in this action.

3.      On September 14, 2015, Plaintiff commenced this action against Defendant Brokersbullpen, LLC ("Brokersbullpen") and John and Jane Doe Defendants 1-10.

4.      On January 12, 2016, Plaintiff filed an Amended Complaint to specifically identify Evan Sadowski ("Sadowski") as a defendant and eliminated the "John Doe" defendants.

5.      On February 15, 2016, the Court entered a Clerk's Default against Defendant Brokersbullpen for failing to respond to the Amended Complaint. Defendant Brokersbullpen has filed a Motion to Vacate the Default, which Plaintiff has not opposed and which is scheduled to be decided on the papers on April 4, 2016.

6.      Discovery ends in this action on April 1, 2016. However, on March 16, 2016, the parties submitted a joint letter request and Consent Order to the Honorable Ann Marie Donio, U.S.M.J., in order to extend the discovery and other case management deadlines for 60 days, which request is presently pending before the Court.

3

## II.    <u>DISCOVERY DISPUTE</u>

7.     On January 28, 2016, Plaintiff propounded its First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions upon Defendants Brokersbullpen, LLC and Evan Sadowski. True and correct copies of such discovery requests are attached hereto as <u>Exhibit A</u>.

8.     Plaintiff's discovery is narrowly tailored and seeks, inter alia, information that could shed light on Defendants' infringement of Plaintiff's intellectual property and related rights and the calculation of damages arising therefrom, including the profits generated by Defendant and its affiliates from the unlawful conduct.

9.     In a March 1, 2016 Joint Discovery Status Report to the Court, Plaintiff noted that discovery was overdue, and that it would be filing a Motion to Compel if discovery was not received by March 4, 2016.

10.     On March 9, 2016, Plaintiff again notified Defendants via email of their overdue discovery, but to no avail.

11.     On March 11, 2016, the Plaintiff held a telephone conference with counsel for the Defendants to discuss their overdue discovery and related matters.

12.     On March 15, 2016, Plaintiff sent further correspondence to Defendants demanding compliance with discovery obligations.

13.     To date, despite Plaintiff's numerous attempts to resolve this discovery dispute, Defendants have not provided any responses to Plaintiff's interrogatories, document requests and requests for admissions.

## III.    <u>LEGAL ARGUMENT</u>

14.     Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.

15.     Relevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

16.     Federal Rule of Evidence 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." The federal rules allow broad and liberal discovery. *Pacitti, et. al. v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999); *In re Madden*, 151 F.3d 125, 128 (3d Cir. 1998) (pretrial discovery is accorded a broad and liberal treatment).

17.     The aforementioned information and documents sought by Plaintiff's discovery requests go to the heart of Plaintiff's liability and damages theories.

18.     Defendants must either respond to the discovery by producing the requested information and documents, or by simply stating that such do not exist.

19.     Defendants' failure to fully answer the interrogatories and requests for admissions or to produce any documents whatsoever is made in bad faith and solely for the purpose of derailing the discovery process and Plaintiff's preparation of its case for trial.

20.     Defendants' discovery defaults have prevented Plaintiff from taking depositions, retaining a damages expert, and otherwise preparing the case for trial.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant its Motion to Compel Discovery Responses in accordance with the proposed form of Order, and award such other relief as it deems just and appropriate.

Respectfully Submitted,

TINOVSKY LAW FIRM

Dated: March 24, 2016                    By: /s/ Vladislav Tinovsky
                                         Vladislav Tinovsky, Esquire
                                          Attorney ID 031122000
                                         5 Neshaminy Interplex
                                         Suite 205
                                         Trevose, PA 19053
                                         215-568-6860
                                         *Counsel for Plaintiff Live Face On Web, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIVE FACE ON WEB, LLC,<br>a Pennsylvania limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BROKERSBULLPEN, LLC,<br>a New Jersey corporation, and EVAN<br>SADOWSKI,<br><br>Defendants. | Civil Action<br><br><br>No.: 1:15-cv-06838-JHR-AMD |

**AFFIDAVIT OF VLADISLAV TINOVSKY, ESQ., COUNSEL FOR PLAINTIFF**

I, Vladislav Tinovsky, Esquire, hereby certify and declare as follows:

1.      On January 28, 2016, Plaintiff propounded its First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions upon Defendants Brokersbullpen, LLC and Evan Sadowski. True and correct copies of such discovery requests are attached to the present Motion to Compel as Exhibit A.

2.      Plaintiff's discovery is narrowly tailored and seeks, *inter alia*, information that could shed light on Defendants' infringement of Plaintiff's intellectual property and related rights and the calculation of damages arising therefrom, including the profits generated by Defendant and its affiliates from the unlawful conduct.

3.      In a March 1, 2016 Joint Discovery Status Report to the Court, Plaintiff noted that discovery was overdue, and that it would be filing a Motion to Compel if discovery was not received by March 4, 2016.

4.      On March 9, 2016, Plaintiff again notified Defendants via email of their overdue discovery, but to no avail.

1

5.     On March 11, 2016, the Plaintiff held a telephone conference with counsel for the Defendants to discuss their overdue discovery and related matters.

6.     On March 15, 2016, Plaintiff sent further correspondence to Defendants demanding compliance with discovery obligations.

7.     To date, despite Plaintiff's numerous attempts to resolve this discovery dispute, Defendants have not provided any responses to Plaintiff's interrogatories, document requests and requests for admissions.

Dated: March 24, 2016                    /s/Vladislav Tinovsky_____
                                         Vladislav Tinovsky

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of March, 2016, Plaintiff's Motion to Compel

Discovery Responses was forwarded to the below-listed counsel via the ECF system:

Andrew Ralston, Esquire
White & Williams LLP
3701 Corporate Parkway, Suite 300
Center Valley, PA 18034-8233
*Counsel for Defendants*

Rafael Vergara, Esquire
White & Williams LLP
The Legal Center
One Riverfront Plaza
1037 Raymond Boulevard, Suite 230
Newark, NJ 07102-5425
*Counsel for Defendants*

Samuel Eichner, Esquire
White & Williams, LLP
7 Times Square, Suite 2900
New York, NY 10036-6524
*Counsel for Defendants*

/s/Vladislav Tinovsky
Vladislav Tinovsky

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LIVE FACE ON WEB, LLC,
a Pennsylvania limited liability company,

                Plaintiff,

       vs.

BROKERSBULLPEN, LLC,
a New Jersey Corporation, and EVAN
SADOWSKI,

              Defendants.

Civil Action

No.: 1:15-cv-06838-JHR-AMD

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## DIRECTED TO DEFENDANTS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Live Face on Web, LLC directs the following interrogatories to Defendants Brokersbullpen, LLC and Evan Sadowski to be answered in writing and under oath.

**I.**     **DEFINITIONS**

1.     The term "LFOW" refers to Plaintiff Live Face on Web, LLC.

2.     The terms "you" or "your" refers to Defendants, Brokersbullpen, LLC and Evan Sadowski, jointly or severally.

3.     The term "Tweople" refers to Tweople, Inc.

4.     The term "your website" includes the website at domain name www.brokersbullpen.com and any other website(s) under your control.

5.     The term "relevant time frame" defines the dates for which information is sought in these requests, and includes dates from January 1, 2013 until the present, unless a specific request provides a different time frame.

1

6. The term "page views" refers to each time a page on a website is viewed. Page views, as defined herein, should not be confused with "hits" which are the number of requests made to a web server (e.g., a single page with three images that is viewed by a user will have one "page view" but at least four "hits" to the server to load all the images and text).

7. "Hits and Visitors" means any and all times that a non-unique visitor to a website accesses a page, or part thereof, of a given URL, Web Server, Web Site and Web Page.

8. The term "website spokesperson video" refers to any video that has appeared on your website promoting your products and/or services.

9. The term "document" includes everything covered by the terms document and electronically stored information as used in Rule 34 of the Federal Rules of Civil Procedure; includes everything covered by the terms writing, recording, and photograph as used in Rule 1001 of the Federal Rules of Evidence; refers to the original and all copies, and any non-identical copies; and includes written, printed, typed, and visually or aurally reproduced material of any kind, whether or not privileged, such as (by way of example and not by way of limitation) letters, correspondence, notes, memoranda, invoices, purchase orders, records, minutes, messages, interoffice communications, diaries, reports, studies, summaries, analyses, tables, tabulations, charts, bills, contracts, agreements, orders, receipts, drawings, sketches, photographs, facsimiles, advertisements, promotional literature, operating manuals, instructions, bulletins, cables, telegrams, tape or other recordings, test data, reports, spreadsheets, electronic mail, and any other electronically stored information stored on (by way of example and not by way of limitation) hard drives, cloud storage, floppy disks, USB flash drives, magnetic tapes, zip drives, DVDs, CD-ROMs, mainframe computers, Internet websites, intranet websites, desktop computers, home

2

computers, laptops, tablets, mobile or handheld devices, computer back-ups, and retired computer systems.

10.     The terms "individual" and "entity" each include natural persons, corporate or other business entities, and all other forms of legal entities.

11.     If you withhold any information called for by these interrogatories because you contend the information is privileged, protected as work product or trial-preparation material, or otherwise protected from discovery, please  identify the withheld information in a privilege log that complies with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

## II.     <u>INSTRUCTIONS</u>

1.     When Interrogatories contain separately numbered or lettered paragraphs, each separately numbered or lettered paragraph should be treated separately, and a separate response furnished.

2.     If, in answering any part of these Interrogatories, you encounter any ambiguity in construing either the Interrogatory or a definition or instruction relevant to the inquiry contained within the Interrogatory, set forth the matter deemed "ambiguous" and set forth the construction chosen or used in answering the Interrogatory.

3.     If any information is requested by an Interrogatory on a calendar year basis, and Defendants' fiscal year differs from a calendar year basis, it will be acceptable to Plaintiff for Defendants to so state, identify the fiscal years involved, and supply the information requested on a fiscal year basis if the information is more readily available in that form.

4.     Wherever an Interrogatory calls for the identity of a document or non-written communication claimed by Defendants to be privileged, include in the statement of the identity

of such document or non-written communication, the fact of such claim of privilege and the basis for the assertion of such claim.

5.     These Interrogatories shall be deemed continuing so as to require a supplemental response if the answering party, or any person acting on its behalf or under its control, obtains additional information called for by this discovery request or if such obtain information which renders the answers hereto incomplete or inaccurate.

6.     The singular includes the plural and vice versa.  The masculine includes the feminine and neuter genders.  The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

7.     As used in this discovery request, the words "and" and "or" shall be construed to mean "and/or," and the word "any" shall be construed to mean "all" where the effect of such construction is to broaden the discovery request in question.

## III.     __INTERROGATORIES__

1.     Identify each person answering these interrogatories on your behalf, and for each person, state his or her position, the duties of such position and identify the interrogatories each person has provided assistance in answering.

ANSWER:


2.     Identify each and every URL, web server, web site and web page owned or controlled by you which includes or included a link to any text, file or page on the following Internet domains, IP addresses, locations, text or content: http://tweople.com, http://code.tweople.com/746, http://yourvideopartner.com, http://yakkingheads.com,

4

http://budgetwebspokespeople.com or http://instantspokespeople.com, and identify all documents supporting your response.

ANSWER:

3.      Identify the date on which any URL, web server, web site or web page identified in response to Interrogatory No. 2 was modified to include a link to any of the following Internet domains,    IP    addresses,    locations,    text    or    content:    http://tweople.com, http://code.tweople.com/746,       http://yourvideopartner.com,       http://yakkingheads.com, http://budgetwebspokespeople.com    or    http://instantspokespeople.com,    and    identify    all documents supporting your response.

ANSWER:

4.      Identify each and every URL, web server, web site and web page owned or controlled by you which linked to the text or files http://tweople.com/client/playerbase-multi.js and "playerbase-multi_js", and identify all documents supporting your response.

ANSWER:

5.      Identify the date on which any URL, web server, web site or web page identified in response to Interrogatory No. 4 was modified to include the referenced website source code and/or text at http://code.tweople.com/746, and identify all documents supporting your response.

ANSWER:

6.      Identify all products and services advertised or described on your website(s) during the relevant time frame.

ANSWER:

7.      State your gross revenues and profits for every product and service identified in response to Interrogatory No. 6, and identify any documentation supporting these sums.

ANSWER:

8.      State the number of page views and unique visitors for your website, on a daily basis, during the relevant time frame, and identify any documentation supporting these numbers.

ANSWER:

9.      Identify your knowledge, if any, of LFOW and its services prior to the filing of the complaint, and identify any documentation supporting your response.

ANSWER:

10.     State, in detail, the number of Hits and Visitors to any URLs, Web Servers, Web Sites and Web Pages identified in response to Interrogatory No. 2, and produce all documents which support, refute, evidenced or were used to prepare your response to this Interrogatory.

ANSWER:

11.     State, in detail, the number of Hits and Visitors to any URLs, Web Servers, Web Sites and Web Pages identified in response to Interrogatory No. 4, and produce all documents which support, refute, evidenced or were used to prepare your response to this Interrogatory.

ANSWER:

12.     Identify individuals associated with reviewing, modifying or approving modifications to your website.

ANSWER:

7

13.     Identify any services or methods used by you to generate, determine, record, track or store the source of your customers and clients.

ANSWER:

14.     State, in detail, all facts that support and relate to each affirmative defense asserted in your Answer, and identify and produce all documents which support, refute, evidence, relate to or were used to prepare your response to this Interrogatory.

ANSWER:

15.     Identify anyone who had any communications (written, electronic or oral) or dealings with any of the Defendants or their agents regarding the subject matter of this action or any factual or legal issue herein, and state the substance of what was discussed during each communication, and identify and produce all documents which support, refute, evidence, relate to or were used to prepare your response to this Interrogatory.

ANSWER:

16.     Identify each and every witness whom you intend to have testify at trial.

ANSWER:

17.     For every expert witness whom you intend to call at trial, identify (a) the name, business address, home address, educational background and subject matter to which the expert witness is expected to testify, (b) all lawsuits in which the expert has testified as a witness, including whether this witness testified for the plaintiff or defendant, (c) the area of expertise to which this expert testified in each case, (d) the titles of all articles, papers, monographs, treatises or texts on any professional subject written by this expert, with a description of the subject matter of each, the date and place each was written, presented, or published, and the name and address of the publisher, (e) the subject matter to which this expert is expected to testify, (f) the facts and opinions to which this expert is expected to testify, (g) a summary of the grounds for each such opinion, and (h) produce all documents and other things which you provided to such witness or which support, refute, evidence, relate to or were used to prepare your response to this Interrogatory.

ANSWER:


TINOVSKY LAW FIRM


Dated: January 28, 2016                     By:/s/ Vladislav Tinovsky
                                            Vladislav Tinovsky, Esquire
                                            PA Bar No. 85671
                                            5 Neshaminy Interplex
                                            Suite 205
                                            Trevose, PA 19053
                                            *Counsel for Plaintiff*
                                            *Live Face On Web, LLC*


9

## <u>CERTIFICATE OF SERVICE</u>

On the 28th day of January, 2016, I, Vladislav Tinovsky, hereby certify that I caused a true and correct copy of the foregoing Plaintiff's First Set of Interrogatories Directed to Defendants to be served by email and/or first class mail, postage prepaid, on all counsel of record.

/s/ Vladislav Tinovsky_____
Vladislav Tinovsky, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIVE FACE ON WEB, LLC, a Pennsylvania limited liability company, <br><br>            Plaintiff, <br><br>       vs. <br><br> BROKERSBULLPEN, LLC, a New Jersey Corporation, and EVAN SADOWSKI, <br><br>            Defendants. | Civil Action <br><br> No.: 1:15-cv-06838-JHR-AMD |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Live Face on Web, LLC, requests that, within thirty (30) days of service of these papers, Defendants Brokersbullpen, LLC and Evan Sadowski produce at the offices of Plaintiff's attorneys of record the documents and things described below and permit inspection, copying, testing, and sampling of the same.

## DEFINITIONS

1.      The term "LFOW" refers to Plaintiff Live Face on Web, LLC.

2.      The terms "you" or "your" refer to Defendants Brokersbullpen, LLC and Evan Sadowski, jointly and severally.

3.      The term "your website" means the website at domain name www.brokersbullpen.com and any other website(s) under your control.

4.      The term "relevant time frame" defines the dates for which information is sought in these requests, and includes dates from January 1, 2013 until the present, unless a specific request provides a different time frame.

5.      "Hits and Visitors" means any and all times that a non-unique visitor to a website

accesses a page, or part thereof, of a given URL, Web Server, Web Site and Web Page.

6. The term "page views" refers to each time a page on a website is viewed. Page views, as defined herein, should not be confused with "hits" which are the number of requests made to a web server (e.g., a single page with three images that is viewed by a user will have one "page view" but at least four "hits" to the server to load all the images and text).

7. The term "conversion rate" refers to the proportion of visitors to a website that purchase goods and/or services based on visiting that website.

8. The term "website spokesperson video" refers to any video that has appeared on your website promoting your products and/or services.

9. The term "document" includes everything covered by the terms document and electronically stored information as used in Rule 34 of the Federal Rules of Civil Procedure; includes everything covered by the terms writing, recording, and photograph as used in Rule 1001 of the Federal Rules of Evidence; refers to the original and all copies, and any non-identical copies; and includes written, printed, typed, and visually or aurally reproduced material of any kind, whether or not privileged, such as (by way of example and not by way of limitation) letters, correspondence, notes, memoranda, invoices, purchase orders, records, minutes, messages, interoffice communications, diaries, reports, studies, summaries, analyses, tables, tabulations, charts, bills, contracts, agreements, orders, receipts, drawings, sketches, photographs, facsimiles, advertisements, promotional literature, operating manuals, instructions, bulletins, cables, telegrams, tape or other recordings, test data, reports, spreadsheets, electronic mail, and any other electronically stored information stored on (by way of example and not by way of limitation) hard drives, cloud storage, floppy disks, USB flash drives, magnetic tapes, zip drives, DVDs, CD-ROMs, mainframe computers, Internet websites, intranet websites, desktop computers, home

computers, laptops, tablets, mobile or handheld devices, computer back-ups, and retired computer systems.

10.     The terms "individual" and "entity" each include natural persons, corporate or other business entities, and all other forms of legal entities.

### REQUESTS FOR PRODUCTION

1.     Any and all documents referred to or relied upon in preparing your Answers to Plaintiff's Interrogatories.

2.     Any and all documents identified by you in response to Plaintiff's Interrogatories.

3.     A copy, in native format, of your website on the date of the complaint.

4.     A copy, in native format, of your website from September 21, 2013 to the present.

5.     Documents sufficient to identify all products and services advertised on your website during the relevant time frame.

6.     Copies of any commercial general liability policies including you as an insured that are or have been in effect during the relevant time frame.

7.     All documents which support your denials of any allegations in the complaint.

8.     All documents which support your affirmative defense(s).

9.     Documents sufficient to identify all individuals and entities responsible for implementing modifications to your website during the relevant time frame.

10.     All documents identifying any website metrics collected for your website during the relevant time frame.

11.     All documents relating to the modification of your website or web server to include the source code and/or text: http://code.tweople.com/746.

12.     Documents sufficient to identify the date on which your website or web server

was modified to include the source code and/or text: http://code.tweople.com/746.

13.    Documents sufficient to identify any URLs, websites or web servers which include the source code and/or text: http://code.tweople.com/746.

14.    Documents sufficient to identify the date, if any, on which your website or web server was modified to include a link to the file playerbase-multi.js.

15.    Documents sufficient to identify the date, if any, on which your website or web server was modified to remove a link to the file playerbase-multi.js.

16.    Documents sufficient to identify the date, if any, on which your website or web server was modified to include the file playerbase-multi.js.

17.    Documents sufficient to identify the date, if any, on which your website or web server was modified to remove the file playerbase-multi.js.

18.    Documents sufficient to identify the date, if any, on which your website or web server was modified to remove or disable the source code of https://tweople.com/client/playerbase-multi.js

19.    A copy of every video that was launched using the source code of https://tweople.com/client/playerbase-multi.js

20.    All documents related to or referring to the creation of any video file launched using the source code of: https://tweople.com/client/playerbase-multi.js.

21.    All documents related to or referring to the creation of the video file playerbase-multi_js.

22.    Documents sufficient to identify the number of page views to your website during the relevant time frame.

23.    All website visitor logs for your website during the relevant time frame in native

format.

24.     All Google Analytics reports (or similar services) for your website during the relevant time frame.

25.     Documents sufficient to calculate the average time spent by visitors to your website on a yearly, weekly and daily basis during the relevant time frame.

26.     Documents sufficient to identify any products or services that were sold by you during the relevant time frame but were not offered or described on your website.

27.     Your profit and loss statements during the relevant time frame.

28.     Documents sufficient to evidence the gross revenue for all products and services advertised or described on your website during the relevant time frame.

29.     Documents sufficient to calculate your profits for all products or services advertised or described on your website during the relevant time frame.

30.     All documents and communications referring to LFOW.

31.     All documents and communications referring to software for implementing a "live spokesperson" or "website spokesperson" on a website.

32.     All documents referring to any video running on your website during the relevant time frame.

33.     All documents referring to any video that launches when anyone visits your website during the relevant time frame.

34.     All documents that refer to the benefits, characteristics or efficacy of using a live spokesperson or website spokesperson on a website.

35.     All documents that refer to the benefits, characteristics or efficacy of using products or services of LFOW.

36.     Any documents evidencing customer inquiries at your website during the relevant time frame.

37.     Any documents evidencing the submissions of visitor information on your website during the relevant time frame.

38.     Any documents evidencing submissions using forms on your website during the relevant time frame.

39.     Any documents evidencing submissions using the "Contact Us" dialog boxes on your website during the relevant time frame.

40.     Any documents evidencing information submitted in the "Contact Us" form on your website during the relevant time frame.

41.     Any documents identifying customers that submitted information using the "Contact Us" form on your website during the relevant time frame.

42.     Any documents evidencing new client packets from your website during the relevant time frame.

43.     Any documents identifying any third party service or software you use to track customer or client leads.

44.     Any documents identifying any third party service or software you use to track customer or client referrals.

45.     Any documents identifying any internal software you use to track customer or client leads.

46.     Any documents identifying any internal software you use to track customer or client referrals.

47.     Any documents explaining or describing how you track customer leads and

referrals from your website.

48.     Any documents explaining or describing how you track client leads and referrals from your website.

49.     Any documents tracking client referrals from your website during the relevant time frame.

50.     Any documents tracking client leads from your website during the relevant time frame.

51.     Any documents tracking customer referrals from your website during the relevant time frame.

52.     Any documents tracking customer leads from your website during the relevant time frame.

53.     Any documents tracking sales from your website during the relevant time frame.

54.     Any documents evidencing the conversion rate of your website during the relevant time frame.

55.     Any documents tracking the purchase or goods or services from your website during the relevant time frame.

56.     Documents evidencing the time frame when a web spokesperson video played on your website.

TINOVSKY LAW FIRM

Dated: January 28, 2016                    By:/s/ Vladislav Tinovsky
                                            Vladislav Tinovsky, Esquire
                                            PA Bar No. 85671
                                            5 Neshaminy Interplex
                                            Suite 205
                                            Trevose, PA 19053
                                            *Counsel for Plaintiff*
                                            *Live Face On Web, LLC*

7

## **CERTIFICATE OF SERVICE**

On the 28th day of January, 2016, I, Vladislav Tinovsky, hereby certify that I caused a true and correct copy of the foregoing Plaintiff's First Requests for Production of Documents Directed to Defendants to be served by email and/or first class mail, postage prepaid, on all counsel of record.

/s/ Vladislav Tinovsky
Vladislav Tinovsky, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIVE FACE ON WEB, LLC,<br>a Pennsylvania limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BROKERSBULLPEN, LLC,<br>a New Jersey Corporation, and EVAN<br>SADOWSKI<br><br>Defendants. | Civil Action<br><br>No.: 1:15-cv-06838-JHR-AMD |

**PLAINTIFF'S FIRST REQUESTS FOR ADMISSION**
**DIRECTED TO DEFENDANT BROKERSBULLPEN, LLC**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Live Face on Web,

LLC requests that Defendant Brokersbullpen, LLC admit the truth of the matters set forth below.

**DEFINITIONS**

1.      The term "LFOW" refers to Plaintiff Live Face on Web, LLC.

2.      The terms "you" or "your" refers to Defendant Brokersbullpen, LLC.

3.      The term "Tweople" refers to Tweople, Inc.

4.      The term "your website" means the website at domain name

www.brokersbullpen.com and any other website(s) under your control.

5.      The term "relevant time frame" defines the dates for which information is sought

in these request, and includes dates from January 2013 until the present, unless a specific request

provides a different time frame.

6.      "Hits and Visitors" means any and all times that a non-unique visitor to a website

accesses a page, or part thereof, of a given URL, Web Server, Web Site and Web Page.

7.      The term "page views" refers to each time a page on a website is viewed.  Page views, as defined herein, should not be confused with "hits" which are the number of requests made to a web server (e.g., a single page with three images that is viewed by a user will have one "page view" but at least four "hits" to the server to load all the images and text).

8.      The term "conversion rate" refers to the proportion of visitors to a website that purchase goods and/or services based on visiting that website.

9.      The term "website spokesperson video" refers to any video that has appeared on your website promoting your products and/or services.

<u>**REQUESTS FOR ADMISSION**</u>

Admit that:

1.      You are aware of the content on your website.

2.      You own the website www.brokersbullpen.com.

3.      You owned the website www.brokersbullpen.com in 2013.

4.      You owned the website www.brokersbullpen.com in 2014.

5.      You owned the website www.brokersbullpen.com in 2015.

6.      You control the website www.brokersbullpen.com

7.      You controlled the website www.brokersbullpen.com in 2013.

8.      You controlled the website www.brokersbullpen.com in 2014.

9.      You controlled the website www.brokersbullpen.com in 2015.

10.     You operate the website www.brokersbullpen.com.

11.     You operated the website www.brokersbullpen.com in 2013.

12.     You operated the website www.brokersbullpen.com in 2014.

13.     You operated the website www.brokersbullpen.com in 2015.

14.     Changes to your website require your approval.

15.     Modifications to your website require your approval.

16.     Changes to the HTML code on your website require your approval.

17.     Modifications to the HTML code on your website require your approval.

18.     You are informed of changes to the HTML code for website www.brokersbullpen.com.

19.     You have the ability to make modifications to the website www.brokersbullpen.com.

20.     You have the ability to make changes to the website www.brokersbullpen.com.

21.     You have the ability to make modifications to the HTML code for the website www.brokersbullpen.com.

22.     You have the ability to make changes to the HTML code for the website www.brokersbullpen.com.

23.     Your website advertises products offered for sale by you.

24.     Your website advertises products that you have sold.

25.     Your website advertises services offered by you.

26.     Your website advertises services that have been provided by you.

27.     Your website included the source code, file and/or text http://code.tweople.com/746.

28.     Your website included the source code, file and/or text http://code.tweople.com/746, which then linked to https://tweople.com/client/playerbase-multi.js.

29.     Your website included the source code, file and/or text http://code.tweople.com/746, which then linked to https://tweople.com/client/playerbase-multi.js

and the file "playerbase-multi_js".

30.     A copy of source code, file and/or text http://code.tweople.com/746 is attached to the Amended Complaint as Exhibit C1.

31.     A copy of source code, file and/or text https://tweople.com/client/playerbase-multi.js is attached to the Amended Complaint as Exhibit C2.

32.     The website www.brokersbullpen.com is intended to increase the sales of your services.

33.     The website www.brokersbullpen.com  is intended to increase the sales of your products.

34.     The website www.brokersbullpen.com  increases the sales of your services.

35.     The website www.brokersbullpen.com  increases the sales of your products.

36.     The website www.brokersbullpen.com  is intended to increase your revenue.

37.     The website www.brokersbullpen.com  increases your revenue.

38.     The website www.brokersbullpen.com  increases your sales.

39.     Your revenue has increased since the launch of the website www.brokersbullpen.com.

40.     Your sales have increased since the launch of the website www.brokersbullpen.com.

41.     Your sales have increased since September 21, 2013.

42.     Your revenue has increased since September 21, 2013.

43.     The number of visitors to the website www.brokersbullpen.com has increased since September 21, 2013.

44.     The bounce rate for the website www.brokersbullpen.com (as reported by Google

Analytics) has decreased since September 21, 2013.

45.     The conversion rate for the website www.brokersbullpen.com has increased since September 21, 2013.

46.     The average session duration for the website www.brokersbullpen.com (as reported by Google Analytics) has increased since September 21, 2013.

47.     Your website was designed to allow the execution of software licensed to you by Tweople.

48.     The HTML source code or text http://code.tweople.com/746 was placed on your website in accordance with your instructions.

49.     While the HTML source code or text http://code.tweople.com/746 was included on your website, a video played when a visitor navigated to your website.

50.     Your website included the following text:  http://code.tweople.com/746

51.     The text http://code.tweople.com/746 was placed on your website in accordance with your instructions.

52.     While text http://code.tweople.com/746 was included on your website, a video played when a visitor navigated to your website.

53.     You paid Tweople to create a website spokesperson video for your website.

54.     You paid Yakking Heads to create a website spokesperson video for your website.

55.     You paid YourVideoPartner.com to create a website spokesperson video for your website.

56.     You paid a third party to create a website spokesperson video for your website.

57.     You were aware of the existence of LFOW prior to creating a website spokesperson video for your website.

58.     You considered having LFOW provide you with a website spokesperson video prior to paying a third party to create a website spokesperson video for your website.

59.     Tweople created a website spokesperson video for your website.

60.     Yakking Heads created a website spokesperson video for your website.

61.     YourVideoPartner.com created a website spokesperson video for your website.

62.     The website spokesperson video created for you advertised products offered for sale by you.

63.     The website spokesperson video created for you advertised services offered for sale by you.

64.     On September 21, 2013, your website included the source code or text http://code.tweople.com/746.

65.     On May 18, 2014, your website included the source code or text http://code.tweople.com/746.

66.     Between September 21, 2013 and May 18, 2014, your website included the source code or text http://code.tweople.com/746.

67.     When people visited your website on September 21, 2013, a website spokesperson video was visible to the website visitor.

68.     When people visited your website on May 18, 2014, you expected a website spokesperson video to be visible to the website visitor.

69.     When people visited your website between September 21, 2013 and May 18, 2014, you expected a website spokesperson video to be visible to the website visitor.

70.     When people visited your website on September 21, 2013, you expected a video that advertised your services or products to be visible to the website visitor.

71.     When people visited your website on May 18, 2014, you expected a video that advertised your services or products to be visible to the website visitor.

72.     When people visited your website between September 21, 2013 and May 18, 2014, you expected a video that advertised your services or products to be visible to the website visitor.

73.     When people visited your website on September 21, 2013, you expected a video advertising your services or products to be visible on your website.

74.     When people visited your website on May 18, 2014, you expected a video advertising your services or products to be visible on your website.

75.     When people visited your website between September 21, 2013 and May 18, 2014, you expected a video advertising your services or products to be visible on your website.

76.     When people visited your website on September 21, 2013, a website spokesperson video was visible to the website visitor.

77.     When people visited your website on May 18, 2014, a website spokesperson video was visible to the website visitor.

78.     When people visited your website between September 21, 2013 and May 18, 2014, you expected a website spokesperson video to be visible to the website visitor.

79.     A purpose of the website spokesperson video on your website was to promote your products.

80.     A purpose of the website spokesperson video on your website was to promote your services.

81.     A purpose of the website spokesperson video on your website was to increase sales of your products.

82.     A purpose of the website spokesperson video on your website was to increase sales of your services.

83.     A purpose of the website spokesperson video on your website was to increase your gross revenues.

84.     A purpose of the website spokesperson video on your website was to increase your sales.

85.     A purpose of the website spokesperson video on your website was to increase your profits.

                                    TINOVSKY LAW FIRM

Dated: January 28, 2016             By:/s/ Vladislav Tinovsky_____
                                        Vladislav Tinovsky, Esquire
                                        PA Bar No. 85671
                                        5 Neshaminy Interplex
                                        Suite 205
                                        Trevose, PA 19053
                                        *Counsel for Plaintiff*
                                        *Live Face On Web, LLC*

**CERTIFICATE OF SERVICE**

On the 28th day of January, 2016, I, Vladislav Tinovsky, hereby certify that I caused a true and correct copy of the foregoing Plaintiff's First Requests for Admission Directed to Defendant Brokersbullpen, LLC, to be served by email and/or first class mail, postage prepaid, on all counsel of record.

/s/ Vladislav Tinovsky
Vladislav Tinovsky, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIVE FACE ON WEB, LLC,<br>a Pennsylvania limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BROKERSBULLPEN, LLC,<br>a New Jersey Corporation, and EVAN<br>SADOWSKI<br><br>Defendants. | Civil Action<br><br>No.: 1:15-cv-06838-JHR-AMD |

**PLAINTIFF'S FIRST REQUESTS FOR ADMISSION**
**DIRECTED TO DEFENDANT EVAN SADOWSKI**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Live Face on Web, LLC requests that Defendant Evan Sadowski admit the truth of the matters set forth below.

**DEFINITIONS**

1.      The term "LFOW" refers to Plaintiff Live Face on Web, LLC.

2.      The terms "you" or "your" refers to Defendant Evan Sadowski.

3.      The term "Tweople" refers to Tweople, Inc.

4.      The term "your website" means the website at domain name www.brokersbullpen.com and any other website(s) under your control.

5.      The term "relevant time frame" defines the dates for which information is sought in these request, and includes dates from January 2013 until the present, unless a specific request provides a different time frame.

6.      "Hits and Visitors" means any and all times that a non-unique visitor to a website accesses a page, or part thereof, of a given URL, Web Server, Web Site and Web Page.

7.      The term "page views" refers to each time a page on a website is viewed.  Page views, as defined herein, should not be confused with "hits" which are the number of requests made to a web server (e.g., a single page with three images that is viewed by a user will have one "page view" but at least four "hits" to the server to load all the images and text).

8.      The term "conversion rate" refers to the proportion of visitors to a website that purchase goods and/or services based on visiting that website.

9.      The term "website spokesperson video" refers to any video that has appeared on your website promoting your products and/or services.

## REQUESTS FOR ADMISSION

Admit that:

1.      You are aware of the content on your website.

2.      You own the website www.brokersbullpen.com.

3.      You owned the website www.brokersbullpen.com in 2013.

4.      You owned the website www.brokersbullpen.com in 2014.

5.      You owned the website www.brokersbullpen.com in 2015.

6.      You control the website www.brokersbullpen.com

7.      You controlled the website www.brokersbullpen.com in 2013.

8.      You controlled the website www.brokersbullpen.com in 2014.

9.      You controlled the website www.brokersbullpen.com in 2015.

10.     You operate the website www.brokersbullpen.com.

11.     You operated the website www.brokersbullpen.com in 2013.

12.     You operated the website www.brokersbullpen.com in 2014.

13.     You operated the website www.brokersbullpen.com in 2015.

14.     Changes to your website require your approval.

15.     Modifications to your website require your approval.

16.     Changes to the HTML code on your website require your approval.

17.     Modifications to the HTML code on your website require your approval.

18.     You are informed of changes to the HTML code for website www.brokersbullpen.com.

19.     You have the ability to make modifications to the website www.brokersbullpen.com.

20.     You have the ability to make changes to the website www.brokersbullpen.com.

21.     You have the ability to make modifications to the HTML code for the website www.brokersbullpen.com.

22.     You have the ability to make changes to the HTML code for the website www.brokersbullpen.com.

23.     Your website advertises products offered for sale by you.

24.     Your website advertises products that you have sold.

25.     Your website advertises services offered by you.

26.     Your website advertises services that have been provided by you.

27.     Your website included the source code, file and/or text http://code.tweople.com/746.

28.     Your website included the source code, file and/or text http://code.tweople.com/746, which then linked to https://tweople.com/client/playerbase-multi.js.

29.     Your website included the source code, file and/or text http://code.tweople.com/746, which then linked to https://tweople.com/client/playerbase-multi.js

and the file "playerbase-multi_js".

30.   A copy of source code, file and/or text http://code.tweople.com/746 is attached to the Amended Complaint as Exhibit C1.

31.   A copy of source code, file and/or text https://tweople.com/client/playerbase-multi.js is attached to the Amended Complaint as Exhibit C2.

32.   The website www.brokersbullpen.com is intended to increase the sales of your services.

33.   The website www.brokersbullpen.com is intended to increase the sales of your products.

34.   The website www.brokersbullpen.com increases the sales of your services.

35.   The website www.brokersbullpen.com increases the sales of your products.

36.   The website www.brokersbullpen.com is intended to increase your revenue.

37.   The website www.brokersbullpen.com increases your revenue.

38.   The website www.brokersbullpen.com increases your sales.

39.   Your revenue has increased since the launch of the website www.brokersbullpen.com.

40.   Your sales have increased since the launch of the website www.brokersbullpen.com.

41.   Your sales have increased since September 21, 2013.

42.   Your revenue has increased since September 21, 2013.

43.   The number of visitors to the website www.brokersbullpen.com has increased since September 21, 2013.

44.   The bounce rate for the website www.brokersbullpen.com (as reported by Google

Analytics) has decreased since September 21, 2013.

45.     The conversion rate for the website www.brokersbullpen.com has increased since September 21, 2013.

46.     The average session duration for the website www.brokersbullpen.com (as reported by Google Analytics) has increased since September 21, 2013.

47.     Your website was designed to allow the execution of software licensed to you by Tweople.

48.     The HTML source code or text http://code.tweople.com/746 was placed on your website in accordance with your instructions.

49.     While the HTML source code or text http://code.tweople.com/746 was included on your website, a video played when a visitor navigated to your website.

50.     Your website included the following text:  http://code.tweople.com/746

51.     The text http://code.tweople.com/746 was placed on your website in accordance with your instructions.

52.     While text http://code.tweople.com/746 was included on your website, a video played when a visitor navigated to your website.

53.     You paid Tweople to create a website spokesperson video for your website.

54.     You paid Yakking Heads to create a website spokesperson video for your website.

55.     You paid YourVideoPartner.com to create a website spokesperson video for your website.

56.     You paid a third party to create a website spokesperson video for your website.

57.     You were aware of the existence of LFOW prior to creating a website spokesperson video for your website.

58.     You considered having LFOW provide you with a website spokesperson video prior to paying a third party to create a website spokesperson video for your website.

59.     Tweople created a website spokesperson video for your website.

60.     Yakking Heads created a website spokesperson video for your website.

61.     YourVideoPartner.com created a website spokesperson video for your website.

62.     The website spokesperson video created for you advertised products offered for sale by you.

63.     The website spokesperson video created for you advertised services offered for sale by you.

64.     On September 21, 2013, your website included the source code or text http://code.tweople.com/746.

65.     On May 18, 2014, your website included the source code or text http://code.tweople.com/746.

66.     Between September 21, 2013 and May 18, 2014, your website included the source code or text http://code.tweople.com/746.

67.     When people visited your website on September 21, 2013, a website spokesperson video was visible to the website visitor.

68.     When people visited your website on May 18, 2014, you expected a website spokesperson video to be visible to the website visitor.

69.     When people visited your website between September 21, 2013 and May 18, 2014, you expected a website spokesperson video to be visible to the website visitor.

70.     When people visited your website on September 21, 2013, you expected a video that advertised your services or products to be visible to the website visitor.

71.     When people visited your website on May 18, 2014, you expected a video that advertised your services or products to be visible to the website visitor.

72.     When people visited your website between September 21, 2013 and May 18, 2014, you expected a video that advertised your services or products to be visible to the website visitor.

73.     When people visited your website on September 21, 2013, you expected a video advertising your services or products to be visible on your website.

74.     When people visited your website on May 18, 2014, you expected a video advertising your services or products to be visible on your website.

75.     When people visited your website between September 21, 2013 and May 18, 2014, you expected a video advertising your services or products to be visible on your website.

76.     When people visited your website on September 21, 2013, a website spokesperson video was visible to the website visitor.

77.     When people visited your website on May 18, 2014, a website spokesperson video was visible to the website visitor.

78.     When people visited your website between September 21, 2013 and May 18, 2014, you expected a website spokesperson video to be visible to the website visitor.

79.     A purpose of the website spokesperson video on your website was to promote your products.

80.     A purpose of the website spokesperson video on your website was to promote your services.

81.     A purpose of the website spokesperson video on your website was to increase sales of your products.

82.     A purpose of the website spokesperson video on your website was to increase sales of your services.

83.     A purpose of the website spokesperson video on your website was to increase your gross revenues.

84.     A purpose of the website spokesperson video on your website was to increase your sales.

85.     A purpose of the website spokesperson video on your website was to increase your profits.

                                        TINOVSKY LAW FIRM

Dated: January 28, 2016                 By:/s/ Vladislav Tinovsky_____
                                            Vladislav Tinovsky, Esquire
                                            PA Bar No. 85671
                                            5 Neshaminy Interplex
                                            Suite 205
                                            Trevose, PA 19053
                                            *Counsel for Plaintiff*
                                            *Live Face On Web, LLC*

## CERTIFICATE OF SERVICE

On the 28th day of January, 2016, I, Vladislav Tinovsky, hereby certify that I caused a true and correct copy of the foregoing Plaintiff's First Requests for Admission Directed to Defendant Evan Sadowski, to be served by email and/or first class mail, postage prepaid, on all counsel of record.

/s/ Vladislav Tinovsky
Vladislav Tinovsky, Esquire